```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                         SOUTHERN DIVISION

3       UNITED STATES OF AMERICA,

4                  Plaintiff,

5        v                               No. 19-CR-20025-1

6

        ASWANTH NUNE,
7
                   Defendant.
8       _____/

9
                              PLEA HEARING
10
                BEFORE THE HONORABLE GERSHWIN A. DRAIN
11                 UNITED STATES DISTRICT JUDGE
               Theodore Levin United States Courthouse
12                 231 West Lafayette Boulevard
                          Detroit, Michigan
13                   Wednesday, May 8, 2019

14      APPEARANCES:

15
          For the Plaintiff:       MR. RONALD WATERSTREET
16                                 MR. TIMOTHY MCDONALD
                                   United States Attorney's Office
17                                 211 W. Fort Street
                                   Detroit, Michigan  48226
18                                 (313) 226-9100
                                   (313) 226-0221
19
          For the Defendant:       MR. MICHAEL A. RATAJ
20                                 Attorney at Law
                                   500 Griswold, Suite 2450
21                                 Detroit, Michigan  48226
                                   (313) 963-4529
22

23      Reported by:               Merilyn J. Jones, RPR, CSR
                                   Official Federal Court Reporter
24                                 merilyn_jones@mied.uscourts.gov

25
```

TABLE OF CONTENTS

**WITNESSES:  PLAINTIFF**                                              **PAGE**
None

**WITNESSES:  DEFENDANT**
None


**OTHER MATERIAL IN TRANSCRIPT:**
Proceedings                                                              3

**EXHIBITS:**                         Identified              Received
None

```
 1                    Detroit, Michigan
 2                    Wednesday, May 8, 2019 - 10:13 a.m.
 3                    THE CASE MANAGER:  All rise.  The United States
 4      District Court for the Eastern District of Michigan is now in
 5      session.  The Honorable Gershwin A. Drain presiding.
 6                    You may be seated.
 7                    The court calls the criminal matter United States
 8      of America versus Aswanth Nune.  Case Number 19-cr-20025-1.
 9                    Counsel, please state your appearances for the
10      record.
11                    MR. WATERSTREET:  Good morning, your Honor.
12      Ronald Waterstreet appearing on behalf of the United States,
13      along with Timothy McDonald, AUSA, and seated at the table is
14      Special Agent Steven Weber.
15                    THE COURT:  All right.  Good morning.
16                    MR. RATAJ:  Good morning, your Honor.  Mike Rataj
17      on behalf Mr. Nune, who stands to my left, as well as the
18      interpreter for this matter.
19                    THE COURT:  All right.  Good morning to you also,
20      Mr. Rataj.
21                    MR. RATAJ:  Good morning, judge.
22                    THE COURT:  All right.  Since we have an
23      interpreter, I'm going to have my case manager administer the
24      interpreter's oath.
25                    THE CASE MANAGER:  Do you solemnly swear that you
```

1    will translate the oath in such questions shall be put to this

2    defendant from the English language to the Hindi language and

3    his answers from the Hindi language to the English language to

4    the best of your ability?

5              THE INTERPRETER:  Yes, I do.

6              THE CASE MANAGER:  Thank you.

7              Please state your name for the record?

8              THE INTERPRETER:  Syed Zaman, interpreter for Mr.

9    Nune.

10             THE COURT:  Okay.  All right.  As I understand it,

11   the defendant wants to tender a plea of guilty to the charge;

12   is that correct?

13             MR. RATAJ:  That is correct, your Honor.

14             THE COURT:  All right.  Mr. Rataj, why don't you

15   and your client approach the podium.

16             MR. RATAJ:  Yes, sir.  Come on.

17             THE COURT:  So, as I -- is there no Rule 11 in

18   this case?

19             MR. RATAJ:  We will do an open plea in this case,

20   your Honor.

21             THE COURT:  Okay.  All right.

22             MR. WATERSTREET:  Your Honor, for the record, one

23   was offered to him and it was below the anticipated guideline

24   range, but after discussion apparently they decided not to

25   accept that plea offer.

```
 1                    THE COURT:  Okay.

 2                    MR. RATAJ:  Well, your Honor, if I may?

 3                    THE COURT:  Okay.

 4                    MR. RATAJ:  We don't want to be bound by any of

 5    the, some of the provisions that were set forth in the Rule 11.

 6    There's, you know, obviously there's some risk involved that I

 7    explained to my client, but I was prepared to proceed as, with

 8    an open plea on this matter.

 9                    THE COURT:  Okay.  All right.  And is it "Nune"?

10                    MR. RATAJ:  "Nune".

11                    THE COURT:  "Nune".

12                    THE DEFENDANT:  "Nune", yes.

13                    THE COURT:  All right.  Mr. Nune, let's see, I'm

14    going to have my case manager administer an oath to you.

15                    THE CASE MANAGER: Please raise your right hand.

16    Do you solemnly swear or affirm that the testimony you are

17    about to give to the Court in this matter here pending shall be

18    the truth, the whole truth, and nothing but the truth?

19                    THE DEFENDANT:  (Nodding head).

20                    THE CASE MANAGER:  Please state your full name for

21    the record.

22                    THE DEFENDANT:  Aswanth Nune.

23                    MR. WATERSTREET:  Your Honor, for the benefit of

24    the record, all the discussions were in English, all the

25    recordings are in English, and I think the interpreter is here
```

```
 1    mainly for the benefit of if there is any issues in his
 2    understanding maybe a particular word or phrase.  I'm sure a
 3    word by word interpretation is not needed based on my
 4    understanding.
 5              Counsel, may have a different opinion.
 6              MR. RATAJ:  Your Honor, Mr. Waterstreet is
 7    correct.  My, my client does have a decent grasp of the English
 8    language; however, out of an abundance of caution to make sure
 9    that there's absolutely no issues with whether he understood
10    what your Honor asks him or what Mr. Waterstreet asks him in
11    connection with this plea, I felt it was in everybody's better
12    interest that we have an interpreter so there's no issues about
13    whether he understood what was going on.
14              THE COURT:  Okay.
15              Well, just out of curiosity, do you want to have
16    every word interpreted or do you want the interpretation on an
17    as needed basis?
18              MR. RATAJ:  I believe in, and I'm going, in my
19    opinion I believe that it should be done on an as needed basis.
20    I agree with Mr. Waterstreet on that.  Okay.
21              THE COURT:  Okay.
22              MR. RATAJ:  If he doesn't understand something, he
23    can turn to the interpreter and ask the interpreter to state
24    it.
25              But I don't think, in my opinion, because I've
```

```
 1   been able to communicate with him numerous visits to Midland,
 2   there have been a couple times where maybe he didn't understand
 3   exactly what I was saying, I'd have to repeat it, but in
 4   general proposition I agree with the government that he does
 5   have a decent grasp of the English language, but again as an
 6   abundance of caution I wanted to make sure we had an
 7   interpreter here in case there was some issue.
 8            So, we don't need to do it on a word by word
 9   basis, so --
10            Do you understand, okay, if you don't understand
11   something, then you can turn to the interpreter and he can
12   interpret, but he doesn't have to say every word.
13            THE DEFENDANT:  Okay.
14            MR. RATAJ:  I agree, judge.
15            THE COURT:  Okay.
16            All right.  Let's proceed in that fashion and Mr.
17   Nune if I say something or use a word that you don't
18   understand, we can stop and you can ask the interpreter to
19   explain it to you, or to interpret what I've said?
20            THE DEFENDANT:  Yes.
21            THE COURT:  Are you with me?
22            THE DEFENDANT:  Yes, sir.
23            THE COURT:  All right.  So, do you understand, Mr.
24   Nune, that you are now under oath and if you answer any of my
25   questions falsely, your answers may later be used against you
```

1   in another prosecution for perjury or false statement; do you

2   understand that?

3              THE DEFENDANT:  Yes, I understand.

4              THE COURT:  Okay.

5              And, Mr. Nune, what's your full name?

6              THE DEFENDANT:  Aswanth Nune.

7              THE COURT:  Okay.  And how old are you?

8              THE DEFENDANT:  Twenty-seven.

9              THE COURT:  And how far did you go in school?

10             THE DEFENDANT:  2017.

11             THE COURT:  Okay.

12             THE DEFENDANT: February 2017.

13             THE COURT:  What grade level did you achieve?

14             Did you graduate from high school or have you had

15   college?

16             THE DEFENDANT:  I have done with my Master's,

17   sir.  I have done with my Master's in California.

18             THE COURT:  Okay.  You have a Master's in

19   California?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And what was your Master's Degree in?

22             THE DEFENDANT:  Computer science.

23             THE COURT:  Okay.  So, have you gone beyond a

24   Master's Degree?

25             THE DEFENDANT:  No, sir.

```
 1                    THE COURT:  Okay.
 2              So, again, if at any point you don't understand
 3    anything I'm saying, again, stop me, let me know, and we'll use
 4    the interpreter at that point.
 5                    THE DEFENDANT:  Sure, sir.
 6                    THE COURT:  Okay.  So have you been treated
 7    recently for any type of mental illness or addiction to alcohol
 8    or narcotics?
 9                    THE DEFENDANT:  No, sir.
10                    THE COURT:  Okay.  And so, again, I'm going to ask
11    you a lot of questions.  I'm required to do this.  And if you
12    have any questions of Mr. Rataj, you can ask him, too.
13              So, are you currently under the influence of any
14    kind of drugs, medication, or alcoholic beverage?
15                    THE DEFENDANT:  No, sir.
16                    THE COURT:  Okay.  And have you received a copy of
17    the indictment that's been filed against you?
18                    THE DEFENDANT:  Yes, sir.
19                    THE COURT:  Have you had a chance to talk to Mr.
20    Rataj about it?
21                    THE DEFENDANT:  Yes, sir.
22                    THE COURT:  And has he been able to answer
23    questions you've had about it?
24                    THE DEFENDANT:  Yes, sir.
25                    THE COURT:  And are you satisfied with the advice
```

```
 1    and the counsel he's given you?

 2              THE DEFENDANT:  Yes, sir.

 3              THE COURT:  And so, has anyone forced you to plead

 4    guilty?

 5              THE DEFENDANT:  No, sir.

 6              THE COURT:  Has anyone threatened you or told you

 7    that you must plead guilty?

 8              THE DEFENDANT:  No, sir.

 9              THE COURT:  And are you doing it freely and

10    voluntarily?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  And are you pleading guilty because

13    you are guilty?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  And so, do you understand that the

16    normal maximum sentence the Court could impose on this case is

17    a sentence of up to five years in prison and the minimum

18    sentence would be a term of probation, you understand that?

19              THE DEFENDANT:  I understand, sir.

20              THE COURT:  Do you also understand that there's a

21    potential fine in the case?

22              I could not impose a fine or I could impose a fine

23    of up to $250,000; do you understand that?

24              THE DEFENDANT:  I understand, sir.

25              THE COURT:  And also there's a potential period of
```

```
1    supervised release that could be up to three years, or there
2    could be no supervised release; do you understand that?
3                  THE DEFENDANT:  Yes, sir.
4                  THE COURT:  All right.  And are you presently on
5    any type of probation or parole, or do you have any other
6    pending cases right now?
7                  THE DEFENDANT:  No, sir.
8                  THE COURT:  And you are a citizen of what country?
9                  THE DEFENDANT:  India, sir.
10                 THE COURT:  Where?
11                 THE DEFENDANT:  India.
12                 THE COURT:  India?
13                 THE DEFENDANT:  Yes.
14                 THE COURT:  Okay.  And so do you understand that
15   there are some collateral consequences that can flow from you
16   pleading guilty here; do you understand that?
17                 THE DEFENDANT:  I understand, sir.
18                 THE COURT:   And do you understand that there's a
19   good likelihood that you'll be deported after this case, you
20   understand that?
21                 THE DEFENDANT:  I understand, sir.
22                 THE COURT:  And do you also understand that
23   there's some additional -- well, let me say this.
24                 You will probably be deported, you understand
25   that?
```

1          THE DEFENDANT:  I understand, sir.

2          THE COURT:  Do you also understand that your

3    efforts to come back into this country in the future will be

4    hindered as a result of this case, you understand that?

5          THE DEFENDANT:  Understand.

6          THE COURT:  It's going to be harder than anybody

7    else to try to get back into this country for any reason, you

8    understand that?

9          THE DEFENDANT:  Understand.

10         THE COURT:  And there are also some other

11   additional consequences that flow from having a felony

12   conviction.

13         Do you have any prior felony convictions at all?

14         THE DEFENDANT:  No, sir.

15         THE COURT:  For example, when you have a felony

16   conviction in this country, in this state, you cannot possess a

17   firearm, you understand that?

18         THE DEFENDANT:  Understand, sir.

19         THE COURT:   With a felony conviction you can't

20   hold certain licenses or get certain jobs.

21         You can't hold certain offices.

22         You can't serve on juries in certain states.

23         So there's additional things that happen to you as

24   a result of having a felony conviction, you understand that?

25         THE DEFENDANT:  Understand, sir.

```
1              THE COURT:  Okay.  And there's also a $100 special
2    assessment that I have to impose on your case.  So I'm going to
3    assess you $100 as a result of this case; do you understand
4    that?
5              THE DEFENDANT:  Understand, sir.
6              THE COURT:  And so, again, what's going to happen
7    after today is that I'll be sentencing you and I don't know
8    what, what the sentence will be, but what's going to happen is
9    I will receive a presentence report that details your
10   background and your history.  I'll learn all of that.  I'll
11   learn about this case and your involvement in this case.  I'll
12   also find out what the sentencing guidelines are, and I don't
13   know what they are right now.
14             And I'm going to ask both counsel what you two
15   believe the guidelines are just for my information.
16             MR. WATERSTREET:  Your Honor, I've done a
17   preliminary calculation.  It's 15 to 21 months.
18             THE COURT:  Okay.
19             Do you have a different interpretation of the
20   guidelines than that, Mr. Rataj?
21             MR. RATAJ:  I do not, your Honor.
22             THE COURT:  Okay.  Okay.
23             So, Mr. Nune, the guidelines that control your
24   case suggest to me that you should receive a sentence somewhere
25   in the range of 15 to 21 months in custody; do you understand
```

1    that?

2              THE DEFENDANT:  Understand, sir.

3              THE COURT:  Okay.  And I don't know what I'm going

4    to do.  I could sentence you in that range; I can go below

5    that, or I can go above it, you understand that?

6              THE DEFENDANT:  I understand, sir.

7              THE COURT:  So, again, there's a lot of things

8    that I look at for sentencing purposes, including there is a

9    statute that tells me of some specific things I have to look at

10   and talk about when I sentence you, you understand that?

11             THE DEFENDANT:  Understand, sir.

12             THE COURT:  Okay.  All right.  And so, let me also

13   talk to you about the rights that you give up when you enter a

14   plea of guilty.

15             You have previously entered a not guilty plea on

16   this case, or one has been entered on your behalf.

17             So, do you understand that you don't have to plead

18   guilty if you don't want to and you can have a trial on the

19   case; do you understand that?

20             THE DEFENDANT:  I understand, sir.

21             THE COURT:  Okay.  And at the trial you would have

22   the right to be presumed innocent and the government would have

23   to prove you guilty beyond a reasonable doubt, you understand

24   that?

25             THE DEFENDANT:  Understand, sir.

1          THE COURT:  And then also at a trial if the

2    government and I agree, you could have a trial by judge instead

3    of a trial by jury; do you understand that?

4          THE DEFENDANT:  Understand, sir.

5          THE COURT:  Okay.  And also at a trial Mr. Rataj

6    could represent you throughout the trial.  He could do all the

7    things that lawyers normally do during a trial:  Ask a lot of

8    questions, cross-examine witnesses, help you pick a jury, you

9    know, help me prepare jury instructions.

10          There's a lot of things that lawyers do and he

11    would be available to do all of those things, you understand

12    that?

13          THE DEFENDANT:  I understand, sir.

14          THE COURT:  And so, do you also understand that at

15    a trial the government would have to bring in witnesses to

16    testify against you, and, again, he could question those

17    witnesses, you understand that?

18          THE DEFENDANT:  Understand, sir.

19          THE COURT:  And then at a trial if you wanted to

20    remain silent, you could do that, or if you wanted to testify,

21    you could do that also; do you understand that?

22          THE DEFENDANT:  Understand, sir.

23          THE COURT:  And if you elected not to testify,

24    that couldn't be used against you in any way; do you understand

25    that?

1          THE DEFENDANT:  I understand, sir.

2          THE COURT:  Okay.  And then at a trial if you

3     wanted to call witnesses and present a defense or have

4     witnesses testify for you, I would help you bring in witnesses

5     with subpoenas; do you understand that?

6          THE DEFENDANT:  Understand, sir.

7          THE COURT:   Okay.

8          So, is it clear to you, Mr. Nune, that by entering

9     this plea of guilty you will stand convicted of this charge and

10    there will be no trial on your case, you understand that?

11         THE DEFENDANT:  Understand, sir.

12         THE COURT:  Okay.

13         In this case you are charged with conspiracy to

14    commit visa fraud and to harbor aliens for profit.  And it says

15    in the indictment that from on or about June of 2017 through

16    January of 2019 that you were involved in having foreign

17    citizens come here and you assisted them in illegally remaining

18    in the country and reentering and working in the United States,

19    and that you recruited people to enroll into the school for

20    financial gain.

21         And so tell me what you did with regard to this

22    case?  What your involvement in it was?

23         MR. WATERSTREET:  Your Honor, if I may, can I go

24    through question and answer period?

25         THE COURT:  Yes.  Yes, you may.

```
1                    MR. WATERSTREET:  Thank you.

2                    THE COURT:  To establish the factual basis here.

3                    MR. WATERSTREET:  To try to establish the factual

4     basis, yes.

5                    THE COURT:  All right.

6                    MR. WATERSTREET:  Mr. Nune, you previously told

7     the Court you're a citizen of India.  You are not a citizen of

8     the United States, are you?

9                    THE DEFENDANT:  No.  Citizen of India.

10                   MR. WATERSTREET:  Just India.

11                   And you entered the United States approximately

12    2015 when you went to go to Northwestern Polytechnic

13    University?

14                   THE DEFENDANT:  Yes, sir.

15                   MR. WATERSTREET:  In California?

16                   THE DEFENDANT:  Yes, sir.

17                   MR. WATERSTREET:  And you knew as a foreign

18    student your status would only remain valid if you were

19    enrolled as a full-time student making progress toward

20    completion of your field of study, correct?

21                   THE DEFENDANT:  Yes, sir.

22                   MR. WATERSTREET:  So you had to maintain being a

23    full-time student, you couldn't just stop and go work someplace

24    else, right?

25                   THE DEFENDANT:  Yes, sir.
```

1          MR. WATERSTREET:  Okay.  And you're familiar with

2    something called the Form I-20, right?

3          THE DEFENDANT:  Yes, sir.

4          MR. WATERSTREET:  And you learned about that as

5    part of your process of coming here to the United States?

6          THE DEFENDANT:  Yes, sir.

7          MR. WATERSTREET:  And remaining here in the United

8    States?

9          THE DEFENDANT:  Yes.

10          MR. WATERSTREET:  And that allows you to apply for

11    an F-1 visa to come here to the United States?

12          THE DEFENDANT:  Yes, sir.

13          MR. WATERSTREET:  And it's proof of your legal and

14    academic status here in the United States; is that right, that

15    I-20?

16          THE DEFENDANT:  Yes, sir.

17          MR. WATERSTREET:  And it can be used as an entry

18    document when you travel abroad and you come back to the United

19    States?

20          THE DEFENDANT:  Yes, sir.

21          MR. WATERSTREET:  And it allows a student to

22    participate it practical training like OPT or CPT, correct?

23          THE DEFENDANT:  Yes, sir.

24          MR. WATERSTREET:  And it's a document that you use

25    when you transfer from one school to another school from, let's

```
 1   say, Northwestern Polytechnic to University of Farmington; is

 2   that right?

 3              THE DEFENDANT:  Yes, sir.

 4              MR. WATERSTREET:  Now, in approximately January of

 5   2018 you transferred from Northwestern Polytechnic University

 6   to University of Farmington, correct?

 7              THE DEFENDANT:  Yes.

 8              MR. WATERSTREET:  And you filed an application and

 9   you received and I-20 from that, right?

10              THE DEFENDANT:  Yes.

11              MR. WATERSTREET:  And prior to transferring in

12   2018 you had already started helping other students transfer

13   from their schools to the University of Farmington, correct?

14              THE DEFENDANT:  Yes, sir.

15              MR. WATERSTREET:  As far back as June of 2017?

16              THE DEFENDANT:  Right.

17              MR. WATERSTREET:  And you knew from the very

18   beginning that the University of Farmington did not offer any

19   classes?

20              THE DEFENDANT:  Yes, sir.

21              MR. WATERSTREET:  As a matter of fact, you said

22   the only reason you wanted to go there was to maintain your

23   status, correct, and you knew you were not going to be

24   attending any classes, correct?

25              THE DEFENDANT:  Yes, sir.
```

1           MR. WATERSTREET:  And you knew that was not

2    approved by the Department of Homeland Security and that it was

3    illegal to try to just maintain your status and not attend

4    classes, correct?

5           THE DEFENDANT:  Yes, sir.

6           MR. WATERSTREET:  And you mentioned that in, you

7    understand, that call back in June 7, 2017, correct?

8           THE DEFENDANT:  Yes, sir.

9           MR. WATERSTREET:  And at a meeting you had at the

10   University on June 12, 2017, correct?

11          THE DEFENDANT:  Yes.

12          MR. WATERSTREET:  And as a matter of fact, during

13   one of those meetings you told the undercover officer that you

14   were looking just to maintain your status and you didn't want

15   to go to classes, right?

16          THE DEFENDANT:  Yes.

17          MR. WATERSTREET:  Now, during this conspiracy you

18   and some of your coconspirators recruited some of the students

19   in exchange for payment, correct?

20          THE DEFENDANT:  Yes, sir.

21          MR. WATERSTREET:  One of your associates was Fayze

22   Shaik.

23          THE DEFENDANT:  Yes, sir.

24          MR. WATERSTREET:  And you and he travelled to the

25   University of Farmington in June of 2017 to talk about the

1    whole process of getting people into the school, correct?

2              THE DEFENDANT:  Yes, sir.

3              MR. WATERSTREET:  And during some of your

4    conversations that occurred during that time, and subsequent,

5    you started talking about getting paid to bring students to the

6    school, correct?

7              THE DEFENDANT:  Yes.

8              MR. WATERSTREET:  Originally, you were going to be

9    paid $500 per student for the first four students and then you

10   negotiated --

11             THE COURT:  Hold on.  You have to give a verbal

12   answer.  You're shaking your head, and making a sound, so you

13   have to say, yes or no, whatever the answer is, because my

14   court reporter is taking down everything and she needs to be

15   able to hear your response.

16             THE DEFENDANT:  Okay, sir.

17             MR. WATERSTREET:  Thank you, your Honor.  I

18   appreciate that.

19             THE COURT:  Okay.  Yes.

20             MR. WATERSTREET:  Originally, you negotiated for

21   four students for $500 each, correct?

22             THE DEFENDANT:  Yes, sir.

23             MR. WATERSTREET:  And then you negotiated a deal

24   where you'd get $1,000 per student thereafter, correct?

25             THE DEFENDANT:  Yes, sir.

```
 1                    MR. WATERSTREET:  And you personally recruited
 2      approximately 19 or more students, correct?
 3                    THE DEFENDANT:  Yes, sir.  Eighteen.
 4                    MR. WATERSTREET:  Eighteen.
 5                    When you sent us some paperwork in an e-mail to
 6      the school when they asked you to please give a list of all the
 7      students you recruited, correct?
 8                    THE DEFENDANT:  Yes, sir.
 9                    MR. WATERSTREET:  And in that you would agree that
10      that was the number of students that you recruited?
11                    THE DEFENDANT:  Yes, sir.
12                    MR. WATERSTREET:  So, if it's more than 18 as you
13      remember, that would be correct?
14                    THE DEFENDANT:  I think it's 18, sir.
15                    MR. WATERSTREET:  If you sent an e-mail that said
16      more than 18?
17                    THE DEFENDANT:  Maybe.
18                    MR. WATERSTREET:  Maybe?
19                    THE DEFENDANT:  Maybe.
20                    MR. WATERSTREET:  And in the process of doing this
21      you were, you were able to receive approximately $20,000 from
22      the school and from students that you collected money on their
23      behalf, correct?
24                    THE DEFENDANT:  Yes, sir.
25                    MR. WATERSTREET:  And you also helped in the
```

23

1    facilitation of the issuance of the Form I-20 for some of your

2    students, correct?

3              THE DEFENDANT:  Yes, sir.

4              MR. WATERSTREET:  As a matter of fact, in August

5    of 2018 you went to the school and picked up an I-20 for a

6    student and their identification card, correct?

7              THE DEFENDANT:  Yes, sir.

8              MR. WATERSTREET:  Additionally, you -- on that, on

9    or about June 12th -- excuse me.  September 7, 2017 you

10   collected $2,000 for recruiting students?

11             THE DEFENDANT: Yes, sir.

12             MR. WATERSTREET:  And then on January 19th

13   collected another $4,000?

14             THE DEFENDANT:  Yes, sir.

15             MR. WATERSTREET:  And then on June 11, 2018,

16   collected another $1,500?

17             THE DEFENDANT:  Yes, sir.

18             MR. WATERSTREET:  And then you also said as part

19   of an e-mail that you had collected approximately $12,500 from

20   students?

21             THE DEFENDANT:  Yes, sir.

22             MR. WATERSTREET:  And that you were going to keep

23   that as payment for your services as a recruiter?

24             THE DEFENDANT:  Yes, sir.

25             MR. WATERSTREET:  Now, you're pleading guilty to

```
 1   conspiracy to harbor aliens for profit and commit visa fraud,

 2   as the judge pointed out, you understand that, correct?

 3                THE DEFENDANT:  Yes, sir.

 4                MR. WATERSTREET:  You agree that you made an

 5   agreement with another person to conceal or harbor an alien who

 6   remained in the United States in violation of the law, correct?

 7                THE DEFENDANT:  Yes.

 8                MR. WATERSTREET:  You were helping students claim

 9   to be that they were going to school when they really were not

10   and they were getting false I-20's, correct?

11                THE DEFENDANT:  Yes, sir.

12                MR. WATERSTREET:  And you knew the alien remained

13   in the United States in violation of the law?

14                THE DEFENDANT:  Yes, sir.

15                THE COURT:  And you committed this offense for

16   private gain so you could make money?

17                THE DEFENDANT:  Yes, sir.

18                MR. WATERSTREET:  You also agreed with another

19   person to knowingly possess, obtain, accept, or receive an I-20

20   or knowingly caused another person to obtain an I-20, which is

21   a document described by statute and regulation as evidence of

22   authorization to stay?

23                THE DEFENDANT:  Yes, sir.

24                MR. WATERSTREET:  As we said before, you got an

25   I-20 for another student and yourself and some, many other
```

1    students you recruited, correct?

2              THE DEFENDANT:  Yes, sir.

3              MR. WATERSTREET:  And you admitted those I-20's

4    are used to come back into the United States and remain in the

5    United States, correct?

6              THE DEFENDANT:  Yes, sir.

7              MR. WATERSTREET:  And that you knew that you

8    obtained this I-20 by fraud because you were claiming that

9    students were going to the school and you knew they were not

10   going to the school?

11             THE DEFENDANT:  Yes.

12             MR. WATERSTREET:  And that you knowingly,

13   voluntarily joined this agreement, you weren't forced to do

14   this, correct?

15             THE DEFENDANT:  Yes, sir.

16             MR. WATERSTREET:  You --  I'm sorry.  That was a

17   double negative there.

18             Were you forced to do this?

19             THE DEFENDANT:  No, sir.

20             MR. WATERSTREET:  And as you, one of the members,

21   you or one of the members of this conspiracy did one of the

22   overt acts described in the indictment to help the conspiracy,

23   correct?

24             THE DEFENDANT:  Yes, sir.

25             MR. WATERSTREET:  I think that will cover the

1    factual basis, your Honor.  The Court already went through the

2    time period of June of 2017 through January of 2019 and I would

3    ask for the Court to take judicial notice that the University

4    of Farmington is located here in the Eastern District of

5    Michigan and he traveled here several times for meetings here

6    in the Eastern District of Michigan.

7                    THE COURT:  Okay.  Is that -- are you prepared to

8    stipulate to that, Mr. Rataj?

9                    MR. RATAJ:  We are prepared to stipulate to that,

10   your Honor.

11                   THE COURT:  Okay.

12                   All right.  Mr. Rataj, do you have anything to add

13   with regard to the factual basis at all?

14                   MR. RATAJ:  Not to the factual basis, your Honor,

15   but if may ask my client one question?

16                   THE COURT:  Sure.

17                   MR. RATAJ:  Mr. Nune, you heard the Assistant

18   United States Attorney ask you a bunch of questions, correct?

19                   THE DEFENDANT:  Yes, sir.

20                   MR. RATAJ:  Is there any question that he asked

21   you that you would need the interpreter to help you understand

22   the question or did you understand all the questions that Mr.

23   Waterstreet asked you?

24                   THE DEFENDANT:  Yes, sir.

25                   MR. RATAJ:  You understood all the questions?

1              THE DEFENDANT:  I understand all the questions.

2              MR. RATAJ:  Okay.

3              THE COURT:  And so, just out of curiosity, where

4    did you get the I-20 forms from?

5              THE DEFENDANT:  From the school, sir.

6              THE COURT:  From the school?

7              THE DEFENDANT:  Yeah.

8              THE COURT:  Okay.

9              MR. RATAJ:  That would have been from the

10   undercover FBI agents, your Honor.

11             THE COURT:  Okay.  Okay.

12             MR. WATERSTREET:  They're actually customs agents.

13             MR. RATAJ:  Custom agents.

14             THE COURT:  Okay.  Customs agents.

15             All right.  So, Mr. Nune, your plea is guilty; is

16   that correct, to the charge?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Okay.  All right.

19             Then, in this case the Court is going to find that

20   the defendant is competent and capable of entering an informed

21   plea, that he's aware of the nature of the charges and the

22   consequences of the plea, and that the plea of guilty is a

23   knowing and voluntary plea supported by an independent factual

24   basis as to each of the essential elements of the offense and

25   I'm therefore going to accept the defendant's plea and find

```
 1    that he is guilty of the charge.
 2              I'm going to refer the matter to the probation
 3    department for a presentence investigation and report, and I'm
 4    scheduling the sentencing for?
 5              THE CASE MANAGER:  August 29th, 2019 at 2:30 p.m.
 6              MR. RATAJ:  What day is that?
 7              THE CASE MANAGER:  It's a Thursday.
 8              MR. RATAJ:  Thursday.  Okay.
 9              MR. WATERSTREET:  Your Honor, may I touch on two
10    other subjects before we leave?
11              THE COURT:  Sure.  Well, do you have a problem
12    with that date?
13              MR. WATERSTREET:  No.  No, I do not.  That's fine.
14              THE COURT:  All right.  Then, that will be the
15    sentencing date.
16              All right.  Then, you have something else, Mr.
17    Waterstreet?
18              MR. WATERSTREET:  Yes, I do.  Thank you, your
19    Honor.
20              THE COURT:  All right.
21              MR. WATERSTREET:  There's also a forfeiture
22    provision as part of the indictment and we have not touched on
23    that.
24              THE COURT: Okay.
25              MR. WATERSTREET:  If I may address that?
```

1              THE COURT:  Yes.

2              MR. WATERSTREET:  There is no agreement between

3    the parties as to forfeiture.  However, as noted in the

4    indictment we do intend to seek forfeiture of funds.

5              Mr. Nune's -- currency received from Mr. Nune's

6    bank account in the amount of $2,789.35.  As Mr. Nune has

7    already pointed out, he received a total of $7,500 directly

8    from the undercover agents as, for his role in recruiting

9    students as well as the additional $12,500 from the students.

10             So we will be seeking the forfeiture at the very

11   least of the funds that were seized from his bank account and

12   we will seek forfeiture of the balance, remaining balance.

13             THE COURT:  Okay.  All right.  You have any

14   comment, Mr. Rataj?

15             MR. RATAJ:  Your Honor, just for the record, I

16   received a bill of particulars regarding forfeiture yesterday,

17   I think it was, and as I indicated to Mr. Waterstreet this

18   morning, we will not be contesting the forfeiture.

19             So, if the appropriate order is forwarded to me,

20   we'll sign them and do away with that issue.

21             THE COURT:  Okay.  All right.  And I've received a

22   copy of the first forfeiture bill of particulars here, too, and

23   I've had a chance to look at it and it seems to be correct.

24             So, we can finalize that at the sentencing date.

25             MR. WATERSTREET:  The last thing is, the defendant

1    understood that there was, I mentioned at the very beginning, I

2    want to make sure he understands here at the very end.  There

3    was a plea offer made to the defendant.  The offer was that he

4    would not receive, we agreed to a basically variance from the

5    guidelines and that he would have to be sentenced at least 12

6    months.  We would have no objection to a sentence of a year and

7    a day.

8            There were two benefits the government was getting

9    as a result of that.  He was going to enter into a judicial

10    order of removal to insure the government didn't have to spend

11    any more of its resources seeking his deportation in the

12    future.  I imagine Mr. Rataj will want to speak to that, and

13    that was one of the benefits that would be gained and that was

14    why we were willing to go down that road.  And I just wanted

15    the Court to understand that was an offer that was made to him.

16            I know Mr. Rataj conveyed it to him.  As long as

17    he understands that was available to him and he's waiving that,

18    that was the last issue I wanted to bring to the Court's

19    attention.

20            THE COURT:  Okay.

21            MR. RATAJ:  If I may comment on that, judge?

22            THE COURT:  Yes.

23            MR. RATAJ:  At the time of sentencing we will

24    place on the record that he is not going to contest

25    deportation.

1          And all of the language that went in the Rule 11

2     regarding deportation I will reiterate in a sentencing

3     memorandum.  He is not going to be contesting deportation.

4          What I'm hoping for at the time of sentence is,

5     quite frankly, your Honor, that he gets credit for time served

6     and deportation process is start immediately.  That's the

7     reason for the open plea.

8          THE COURT:  There's a possibility of that.  I

9     don't know what I'm going to do.  That's a possibility.

10         MR. RATAJ:  I've made it very clear to the client,

11    Mr. Nune, that there are no guarantees, but I wanted to keep

12    that option open.  And so, that was the, that is the primary

13    reason for the open plea, so the Court is fully aware.

14         But I will not, or we will not be contesting

15    deportation at the time of sentencing.

16         THE COURT:  Okay.

17         MR. RATAJ:  And whatever orders, documents that

18    need to be signed, Mr. Nune is prepared to sign those documents

19    to start the deportation process as quickly as possible.

20         THE COURT:  Okay.

21         MR. RATAJ:  Now, I have one other request of the

22    Court, your Honor, if I may, and that is with respect to the

23    probation interview.  Given the fact that Mr. Nune is being

24    housed in Midland and given the fact this is an extensive

25    practice, I'm respectively requesting an additional 21 days to

```
 1    conduct the presentence interview with probation.

 2              THE COURT:  Okay.  And I don't have a problem with

 3    that.

 4              MR. RATAJ:  All right.

 5              THE COURT:  I think it might typically occur today

 6    because we're in the morning.

 7              MR. RATAJ:  Unfortunately, I cannot do it this

 8    afternoon.

 9              THE COURT:   That's not a problem.  That's not a

10    problem.

11              So, I wonder if I need to make an adjustment and

12    move the date out further another three weeks or you just want

13    to see how it plays out?

14              MR. RATAJ:  No, I think that we should just go

15    ahead.  I'll schedule this interview as quickly as I can.

16              THE COURT:  Okay.

17              MR. RATAJ:  I want to have a buffer, if you will.

18              THE COURT:  Okay.

19              MR. RATAJ:  Because I can't get it done in seven

20    days like we're supposed to do.

21              THE COURT:  Okay.

22              MR. RATAJ:  But I'll do it as expeditiously as

23    possible.  I don't really think that it's going to affect the

24    sentencing date, quite frankly, since it's so far out.

25              THE COURT:  Okay.
```

1           MR. RATAJ:  All right.

2           THE COURT:  And when you -- I assume you're doing

3    that so you can be present for the presentence report.

4           MR. RATAJ:  We have to be present, your Honor.

5           THE COURT:  Okay.

6           MR. RATAJ:  We have to be present.

7           THE COURT:  And so, I'll let you schedule a date

8    with my case manager and she'll be in touch with the probation

9    department for the interview if you can't work it out with --

10          MR. RATAJ:  What I'm going to do, judge --

11          THE COURT:  Okay.

12          MR. RATAJ:  -- I'm going to go upstairs right now,

13   find out who it is, give them a call, and say, here, here's my

14   schedule, get your schedule out, and let's do this.  I just

15   don't want to have a problem because I can't do it in seven

16   days.

17          THE COURT:  And if you have any problem with that,

18   give me a call.

19          MR. RATAJ:  I'll work this out, judge.  Like I

20   said, I just want a buffer, that's all.

21          THE COURT:  All right.  Gentlemen, anything else

22   we need to do or take up at this point?

23          I think I've accepted the plea, made some

24   findings.  We've talked about the forfeiture matter, and I

25   guess there's nothing else unless you all have something else?

1          MR. WATERSTREET:  No, your Honor.  Thank you very

2     much for your patience, your Honor.

3          MR. RATAJ:  We're all set, your Honor.  Thank you

4     very much.

5          THE COURT:  All right.  Good enough.

6          THE CASE MANAGER:  All rise.

7          THE COURT:  And I guess we'll have the interpreter

8     come back for sentencing just in case there's some issue.

9          MR. RATAJ:  Yes.

10          THE COURT:  Okay.  All right.  We'll be in recess.

11          THE CASE MANAGER:  Thank you.

12          (At 10:49 a.m. proceedings concluded)

13               C E R T I F I C A T E

14          I, Merilyn J. Jones, Official Court Reporter of the

15     United States District Court, Eastern District of Michigan,

16     appointed pursuant to the provisions of Title 28, United States

17     Code, Section 753, do hereby certify that the foregoing pages

18     1-34, inclusive, comprise a full, true and correct transcript

19     taken in the matter of the United States of America versus

20     Aswanth Nune, 19-cr-20025 on Wednesday, May 8, 2019.

21

22               /s/Merilyn J. Jones
               Merilyn J. Jones, CSR, RPR
23               Federal Official Reporter
               231 W. Lafayette Boulevard
24               Detroit, Michigan  48226

25     Date: June 2, 2019